**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| _____ : | Civil Action No. 15-7988 (FLW)(LHG) |
| LISA FUENTES, on behalf of herself and : | |
| all others similarly situated, : | **OPINION** |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| AR Resources, Inc., et al., : | |
| : | |
| Defendants. : | |
| _____ : | |

**WOLFSON, United States District Judge**:

Before the Court are the cross motions of Plaintiff Lisa Fuentes ("Plaintiff") and

Defendant AR Resources, Inc. ("Defendant"), for summary judgment, pursuant to Fed. R. Civ. P.

56, on Plaintiff's Complaint under the Fair Debt Collection Practices Act ("FDCPA"). Plaintiff

contends that Defendant violated the FDCPA, 15 U.S.C. §§ 1692e(2), 1692e(10), and 1692f(1),

by sending Plaintiff a debt collection letter offering a $5.00 convenience fee for transactions

completed by credit card. Defendant contends that the offered $5.00 convenience fee is either

exempted from the FDCPA as a fee not "incidental" to Plaintiff's underlying debt, or,

alternatively, falls within an exception to the FDCPA for collection agency fees expressly

authorized by the agreement governing Plaintiff's underlying debt. For the reasons set forth

below, the Court concludes that (i) Plaintiff retains Article III standing to bring her FDCPA

claims after the Supreme Court's decision in *Spokeo, Inc., v. Thomas Robins*, 136 S. Ct. 1540

(2016); (ii) the $5.00 credit card convenience fee is a fee "incidental" to Plaintiff's debt, subject

to the FDCPA; and (iii) the $5.00 credit card convenience fee is not expressly authorized by the

agreement governing Plaintiff's underlying debt, and, therefore, violates the FDCPA.

Accordingly, Plaintiff's motion for summary judgment is granted and Defendant's cross motion for summary judgment is denied.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

Defendant is a debt collector and was retained by the Center for Orthopedic Sports Medicine, P.A. ("COSM"), to collect a $1,405.50 medical debt from Plaintiff. Defendant's Statement of Material Facts ("DSMF"), ¶¶ 3-4. Plaintiff incurred the debt as a result of receiving medical services from COSM. Plaintiff's transaction with COSM was governed by a Financial Agreement and Authorization for Treatment ("Agreement") executed by the parties. *Id.* at ¶ 5. In the Agreement, Plaintiff agreed to the following:

> In the event that COSM has to use collection techniques in the form of legal action or an agency, I agree to pay collection agency fees of 2% per month of the balance due, in addition to attorney and court costs.

DSMF, ¶ 6. As part of Defendant's effort to collect the debt, Defendant sent Plaintiff a letter, dated July 1, 2015 (the "Letter"), which included the following language:

> If you wish to pay by credit card, complete the credit card information below, tear off and return in the enclosed envelope. A $5.00 convenience fee should be added to all transactions. No fees applied to mailed checks or money orders.

*Id.* at ¶ 2.

On November 10, 2015, Plaintiff filed the present suit against Defendant, alleging that Defendant's Letter violated the Fair Debt Collection Practices Act. Specifically, in a two-count Complaint, Plaintiff alleges that Defendant falsely represented the character, amount, or legal status of Plaintiff's debt and falsely represented that a convenience fee could lawfully be received by Defendant in violation of 15 U.S.C. §§ 1692e(2)(A) and 1692e(2)(B), as well as used a false representation or deceptive means in an attempt to collect Plaintiff's debt in violation of § 1692e(10) [Count I]; and used unfair or unconscionable means to collect or

attempt to collect a debt by charging or attempting to charge an unauthorized convenience fee in

violation of 15 U.S.C. § 1692f(1) [Count 2]. Defendant and Plaintiff cross-moved for summary

judgment on both counts of the Complaint, on August 15, 2016.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the Court is satisfied that "there is no genuine

issue as to any material fact and that the movant is entitled to a judgment as a matter of law."

*Fed. R. Civ. P.* 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A factual dispute is

genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for

the non-moving party," and it is material only if it has the ability to "affect the outcome of the

suit under governing law." *Kaucher v. County of Bucks,* 455 F.3d 418, 423 (3d Cir. 2006); *see*

*also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Disputes over irrelevant or

unnecessary facts will not preclude a grant of summary judgment. *Anderson,* 477 U.S. at 248. "In

considering a motion for summary judgment, a district court may not make credibility

determinations or engage in any weighing of the evidence; instead, the non-moving party's

evidence 'is to be believed and all justifiable inferences are to be drawn in his favor .'" *Marino v.*

*Indus. Crating Co.,* 358 F.3d 241, 247 (3d Cir. 2004) (*quoting Anderson,* 447 U.S. at 255)); *see*

*also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Curley v.*

*Klem,* 298 F.3d 271, 276–77 (3d Cir. 2002). In deciding the merits of a party's motion for

summary judgment, the court's role is not to evaluate the evidence and decide the truth of the

matter, but to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249.

The burden of establishing that no "genuine issue" exists is on the party moving for

summary judgment. *Celotex,* 477 U.S. at 330. "A nonmoving party has created a genuine issue of

material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."

*Gleason v. Norwest Mortg., Inc.,* 243 F.3d 130, 138 (3d Cir. 2001). The non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. County of Lawrence,* 396 F.3d 314, 319 (3d Cir. 2005) (quotations omitted). Under *Anderson,* plaintiffs' proffered evidence must be sufficient to meet the substantive evidentiary standard the jury would have to use at trial. 477 U.S. at 255. To do so, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324 (quotations omitted); *see also Matsushita,* 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley,* 172 F.3d 238, 252 (3d Cir. 1999). There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.,* 972 F.2d 53, 55 (3d Cir.1992).

"In a contract interpretation action, summary judgment is appropriate only where the contractual language is unambiguous—*i.e.,* 'subject to only one reasonable interpretation.'" *Mylan Inc. v. SmithKline Beecham Corp.*, 723 F.3d 413, 418 (3d Cir. 2013) (quoting *Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co.,* 180 F.3d 518, 521 (3d Cir. 1999) (citations omitted)). "If the nonmoving party presents a reasonable alternative reading of the contract, then a question of fact as to the meaning of the contract exists which can only be resolved at trial." *Id.* (quoting *Newport Assocs. Dev. Co. v. Travelers Indem. Co.,* 162 F.3d 789, 792 (3d Cir. 1998)). "Whether a contract is ambiguous is an issue of law." *Id.* at 419 (quoting *Sumitomo Mach. Corp. v. AlliedSignal, Inc.,* 81 F.3d 328, 332 (3d Cir. 1996)).

## III. ARTICLE III STANDING

Although Defendant does not challenge Plaintiff's constitutional standing to sue, this Court has an independent obligation to confirm the existence of standing before proceeding to an adjudication of Plaintiff's claims. *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (Article III standing is a jurisdictional matter). Article III of the United States Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." *Lance v. Coffman*, 549 U.S. 437, 439 (2007). *See Spokeo*, 136 S. Ct. at 1547 ("Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."). "The standing inquiry . . . focuse[s] on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)) (alterations original).

To demonstrate standing, a plaintiff must establish: "(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 272 (3d Cir. 2016) (quoting *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016)) (internal quotations and citations omitted). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo*, 136 S. Ct. at 1547 (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).

To allege injury-in-fact, "a plaintiff must claim the invasion of a concrete and particularized legally protected interest resulting in harm that is actual or imminent, not conjectural or hypothetical." *Nickelodeon*, 827 F.3d at 272 (quoting *Finkelman*, 810 F.3d at 193) (internal quotations omitted). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548. A harm is "concrete" only "if it is 'de

*facto*'; that is, it must actually exist"—it cannot be merely "abstract." *Id.* (quoting *Spokeo*, 136 S. Ct. at 1548). Moreover, a harm need not be tangible, to be "concrete." To determine whether an "intangible" harm constitutes an injury-in-fact sufficient for standing purposes, consideration should focus on whether the purported injury "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S. Ct. at 1549 (citation omitted). However, "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 578 (1992)) (alteration original).

Importantly, in the context of statutory violations, like those alleged in this case, allegations of a "bare procedural violation [under a statute], divorced from any concrete [or substantive] harm" cannot satisfy the injury-in-fact requirement. *Spokeo*, 136 S. Ct. at 1549 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing")). Stated differently, not every "bare" violation of a right granted by a statute is inherently injurious. Rather, such a violation must result in a "concrete" harm. That requirement remains in circumstances where a statute "purports to authorize [a] person to sue to vindicate [a statutory procedural] right." *Id.*; *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing").

Thus, standing based on a violation of a statutorily created right turns on whether such a right is substantive or merely procedural. A "procedural right" is defined as "[a] right that derives from legal or administrative procedure; a right that helps in the protection or enforcement

6

of a substantive right." *In re Michaels Stores, Inc.*, No. 14–7563, 2017 U.S. Dist. LEXIS 9310, at

*17 n. 12 (D.N.J. Jan. 24, 2017) (quoting *Landrum v. Blackbird Enters., LLC*, No.16–0374, 2016

U.S. Dist. LEXIS 143044, at *3 (S.D. Tex. Oct. 3, 2016)) (internal citations omitted) (alteration

original). On the other hand, a "substantive right" is "[a] right that can be protected or enforced

by law; a right of substance rather than form." *Id.* (citing *Landrum*, 2016 U.S. Dist. LEXIS

143044, at *3) (internal citations omitted) (alteration original). "To the extent that a violation of

the procedural right has no effect on the substantive right, the bare procedural violation does not

cause an injury of the sort that, alone, would support standing." *Id.* (citing *Landrum*, 2016 U.S.

Dist. LEXIS 143044, at *3).

   While the Third Circuit has not addressed whether a violation of the FDCPA can give

rise to a concrete injury, post-*Spokeo*, courts in this district have considered that question. *See,*

*e.g.*, *Thomas v. Youderian*, No. 16–1408, 2017 U.S. Dist. LEXIS 16585, at *20–21 (D.N.J. Feb.

3, 2017) (finding concrete injury where the plaintiff allegedly received a collection letter

notifying him that a small convenience fee would be charged for payments made by credit card);

*Carney v. Goldman*, No. 15–260, 2016 U.S. Dist. LEXIS 177087, at *14 (D.N.J. Dec. 22, 2016)

(holding that the plaintiffs satisfied the concreteness requirement of standing, when they alleged

that the debt collector misstated the amount of debt owed in their collection letters); *Blaha v.*

*First Nat'l Collection Bureau, Inc.*, No. 16–2791, 2016 U.S. Dist. LEXIS 157575, at *19 (D.N.J.

Nov. 10, 2016) (concluding that the allegation that the debt collector misrepresented the legal

status of the debt in the collection letter is sufficiently concrete to confer Article III standing); *cf.*

*Benali v. AFNI, Inc.*, No. 15–3605, 2017 U.S. Dist. LEXIS 783, at *16 (D.N.J. Jan. 4, 2017)

(holding, on a motion for summary judgment, that the plaintiff did not establish a concrete injury

because, based on his testimony that he knew the debt was not actually his, there was no risk that

plaintiff would have paid the convenience fee). Those courts in this district, following *Spokeo*, have found constitutional standing in two different FDCPA contexts, both of which are at issue in this case: (i) violations of § 1692e for false, deceptive and misleading statements; and (ii) violations of § 1692f for the use of unfair and unconscionable means in collecting a debt.

With respect to violations of § 1692e, courts "trend in favor of finding concrete injury under the FDCPA where the amount or validity of the debt has been misstated." *Thomas*, 2017 U.S. Dist. LEXIS 16585, at *16. For example, shortly after the Supreme Court decided *Spokeo*, the court in *Blaha* concluded that the plaintiff had established a concrete injury-in-fact, where she alleged that the defendant sent a collection letter to the plaintiff with a settlement offer on a time barred debt, but the defendant failed to disclose the legal status of that debt. *See Blaha*, 2016 U.S. Dist. LEXIS 157575, at *22–24. The court reasoned that Congress enacted the FDCPA "to eliminate abusive debt collection practices and to promote further action to protect consumers against debt collection abuses," and that the allegation that the defendant made false and misleading statements to plaintiff about the status of the debt "is precisely [the harm] that ... the statute was intended to guard against." *Id.* at *22–23. Similarly, in *Carney*, the plaintiff alleged that the defendant violated the FDCPA when it sent collection letters to the plaintiff containing false and misleading statements about the amount of debt owed. 2016 U.S. Dist. LEXIS 177087, at *13–16. The court held that, because "[t]he FDCPA unambiguously grants recipients of debt-collection letters ... a right to be free from abusive collection practices," including the use of false and misleading representations, the plaintiff sufficiently alleged the concreteness requirement under Article III. *Id.* at *15–16.

In connection with violations of § 1692f, which prohibits the use of unfair and unconscionable debt collection practices, courts in this district have addressed the issue whether

a collection letter that notifies the debtor that he or she will be assessed a convenience charge for paying the debt with a credit card, like the Letter at issue in this case, constitutes a concrete injury. *See Benali*, 2017 U.S. Dist. LEXIS 783, at *16–17; *Thomas*, 2017 U.S. Dist. LEXIS 16585, at *17–21. In that regard, the *Thomas* court has found that, based on the alleged deceptive language in a collection letter, the plaintiff was "at risk of being misled into paying the ... [c]onvenience [f]ee" or, in the alternative, "at risk of forgoing the convenience of paying the bill on credit (or, I suppose, at risk of giving up on paying for it for lack of ready money)." 2017 U.S. Dist. LEXIS 16585, at *19–20. Although the risk of harm was slight, the court found that it was still present, since the "[d]eprivation of the right to be free of false or deceptive collection information, with the attendant risk of economic injury, is an interest recognized by the [FDCPA], and one reasonably rooted in the traditions of the common law." *Id.* at * 20.

Turning to the facts of the case at bar, it is clear that Plaintiff alleges a particularized injury, namely that the debt collection letter containing the allegedly unconscionable or deceptive language in violation of the FDCPA was directed at and sent to Plaintiff. Moreover, for the same reasons that the court in *Thomas* observed, Plaintiff has established that "the particular procedural violations alleged in this case entail a degree of risk sufficient to meet the concreteness requirement." *Spokeo*, 136 S. Ct. at 1550. Plaintiff has a substantive, statutory right under the FDCPA to be free from false or deceptive information in connection with the collection of a debt, which is alleged to have been infringed by Defendant's representation that it was entitled to charge a fee that is alleged to be neither authorized by law nor permitted by the contractual terms of Plaintiff's underlying debt instrument. Plaintiff was thus placed at risk of economic injury by potentially being deceived into paying a fee that was legally barred.

Accordingly, this Court joins the "overwhelming majority of courts" that have determined that FDCPA violations under §§ 1692e and 1692f give rise to concrete, substantive injuries sufficient to establish Article III standing. *Pisarz v. GC Servs. Ltd. P'ship*, No. CV 16-4552 (FLW), 2017 WL 1102636, at *5 (D.N.J. Mar. 24, 2017) (quotation omitted) (collecting cases). *See also Bernal v. NRA Grp., LLC*, No. 16 C 1904, 2016 WL 4530321, at *4–5 (N.D. Ill. Aug. 30, 2016) (finding alleged violations of section 1692e, which prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt," and section 1692f, which prohibits "unfair or unconscionable means to collect or attempt to collect any debt," constitute a concrete injury sufficient for Article III standing (quoting 15 U.S.C. §§ 1692e, 1692f)).

This result is consistent with the pre-*Spokeo* precedents in this Circuit and District specifically addressing alleged violations of Sections 1692f. In considering the impact of *Spokeo* on its prior decisions, the Third Circuit observed:

> Although it is possible to read the Supreme Court's decision in *Spokeo* as creating a requirement that a plaintiff show a statutory violation has caused a "material risk of harm" before he can bring suit, *id*. at 1550, we do not believe that the Court so intended to change the traditional standard for the establishment of standing. As we noted in *Nickelodeon*, "[t]he Supreme Court's recent decision in *Spokeo* . . . does not alter our prior analysis in *Google*." *Nickelodeon*, 827 F.3d at 273 (citation omitted).

> We reaffirm that conclusion today. *Spokeo* itself does not state that it is redefining the injury-in-fact requirement. Instead, it reemphasizes that Congress "has the power to define injuries," 136 S.Ct. at 1549 (citation and internal quotation marks omitted), "that were previously inadequate in law." *Id.* (citation and internal quotation marks omitted). In the absence of any indication to the contrary, we understand that the *Spokeo* Court meant to reiterate traditional notions of standing, rather than erect any new barriers that might prevent Congress from identifying new causes of action though they may be based on intangible harms.

*In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 637–38 (3d Cir. 2017). In *Google*, the decision that the Third Circuit confirmed remains the governing law, the Circuit Court held:

> Though the injury must affect the plaintiff in a personal and individual way, this standard does not demand that a plaintiff suffer any particular type of harm to have standing. Consequently, . . . a plaintiff need not show actual monetary loss for purposes of injury in fact. Rather, the actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 134 (3d Cir. 2015), *cert. denied sub nom. Gourley v. Google, Inc.*, 137 S. Ct. 36, 196 L. Ed. 2d 26 (2016) (internal quotations omitted).

Consistent with its holding in *Google*, the Third Circuit had earlier held in the context of the FDCPA that although § 1692f(1) specifically prohibits only the "collection" of any unauthorized amount or fee, because § 1692f more broadly prohibits improper means "to collect or attempt to collect" any debt, and its list of violative conduct in § 1692f is not exhaustive, "'collection' in § 1692f(1) includes attempted collection as well as actual collection." *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 367 n.4 (3d Cir. 2011). Accordingly, in order to have standing to sue under § 1692f(1), a plaintiff need not allege that he or she actually paid the unauthorized fee, only that the defendant attempted to collect it. The Third Circuit later made as much explicitly clear in its unreported decision in *Salvati v. Deutsche Bank Nat. Trust Co.*, 575 F. App'x 49 (3d Cir. 2014), where it held that the district court below erred in dismissing the plaintiff's claims under 15 U.S.C. §§ 1692e(2) and 1692f(1) because the plaintiff "paid none of the alleged illegal fees and costs and, thus, has not suffered any actual damages." *Id.* at 56. The Court observed that "under the FDCPA, a plaintiff may collect statutory damages even if he has suffered no actual damages," and cited the Second Circuit's opinion in *Miller v. Wolpoff &*

11

*Abramson, L.L.P.,* 321 F.3d 292, 307 (2d Cir. 2003), for the proposition that "[C]ourts have held that actual damages are not required for standing under the FDCPA." *Ibid. See also Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F.3d 1208, 1212 (10th Cir. 2006) ("[plaintiff] has suffered an injury in fact under the FDCPA and therefore has standing to pursue his challenge against defendants' request for an award of attorney's fees in the foreclosure action" because under § 1692f "[a] debt collector may not use unfair or unconscionable means to collect or *attempt to collect* any debt.") (emphasis in original); *Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 307 (2d Cir. 2003) ("the fact that plaintiff did not ever pay any attorneys' fees to [defendant] does not necessarily suggest that he was not injured for purposes of his FDCPA claim, if he can show that [defendant] *attempted* to collect money in violation of the FDCPA"); *Barows v. Chase Manhattan Mortg. Corp.*, 465 F. Supp. 2d 347, 354 (D.N.J. 2006) ("Despite the fact that Plaintiff never paid the attorneys' fees and costs requested by Defendants, Plaintiff has suffered an injury in fact for the purposes of standing. The FDCPA prohibits unfair or unconscionable means to collect or *attempt* to collect any debt not permitted by law. Thus, a debt collector can violate the FDCPA even if he does not actually receive the illegal debt he tried to collect. Additionally, a plaintiff may be entitled to statutory damages for a debt collector's violation even if she has not suffered any actual damages.") (internal quotations omitted). Accordingly, even after *Spokeo*, because Congress has defined statutory injuries under the FDCPA that do not require actual, pecuniary injury, where, as in the case of the receipt of a collection letter charging unauthorized fees, the plaintiff's claimed injury is sufficiently particularized and concrete, the requirements of Article III standing are met. The Court finds that the Plaintiff in this case has introduced sufficient facts on the present motions for summary judgment to establish Article III standing.

**IV. ANALYSIS**

Section 1692f is a catchall provision providing that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Section 1692f's subsections then itemize nonexclusive examples of conduct that constitute a violation of the catchall provision.  "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law" is a violation of § 1692f(1). 15 U.S.C. § 1692f(1); *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 407–08 (3d Cir. 2000) (adopting the reasoning in *Tuttle v. Equifax Check,* 190 F.3d 9 (2d Cir. 1999), that a fee does not violate the FDCPA (1) where it is expressly permitted under state law; or (2) if state law does not expressly authorize or prohibit the charge, where the customer expressly agreed to the fee in the contract creating the debt).

Defendant moves for summary judgment on Count I, Plaintiff's § 1692f claim, on two distinct bases. First, Defendant argues that the $5.00 convenience fee (the "Fee") on credit card transactions it offered to Plaintiff in the Letter is not a fee "incidental" to the principal debt obligation within the meaning of the FDCPA, and therefore falls outside the ambit of the statute. Defendant contends that the Fee is not incidental to the debt because it was optional, applicable only if Plaintiff voluntarily elected to pay by credit card rather than by alternative, available methods which were offered without fees, and because it was not unfair or unconscionable under the circumstances. Second, Defendant argues that the Fee was expressly authorized by the unambiguous language of the Agreement between Plaintiff and COSM underlying the debt, and therefore does not violate the FDCPA. Defendant moves for summary judgment on Count II, Plaintiff's § 1692e claims, on the grounds that Plaintiff's § 1692e claims are based on the same

factual predicate as Plaintiff's § 1692f claim and therefore also fail because there has been no underlying § 1692f violation or other use of deceptive means.

In addition to opposing Defendant's motion, Plaintiff cross-moves for summary judgment on the grounds that the Fee is not expressly authorized by the unambiguous language of the Agreement, and therefore violates the FDCPA. Plaintiff and Defendant agree as to all material facts. Accordingly, questions remaining before the Court on the parties' cross-motions are purely legal in nature, namely whether the convenience fee in the Letter is "incidental" to Plaintiff's underlying debt, and whether the convenience fee is expressly authorized by the Agreement between Plaintiff and COSM.

## A.  The Fee is Incidental to Plaintiff's Debt

Defendant contends that the Fee does not violate § 1692f because it is optional and because it is not unfair or unconscionable under the statute. In support of its position, Defendant relies exclusively on the unreported decision of the Central District of California in *Flores v. Collection Consultants of California*, No. 14-CV-0771, 2015 WL 4254032 (C.D. Cal. Mar. 20, 2015). The court in *Flores* was faced with a closely analogous fact pattern to the one at bar. The plaintiff in *Flores* challenged, under § 1692f, a $5.00 service fee levied on credit card transactions presented as one of several optional modes of payment by the defendant in a debt collection letter. The *Flores* court, observing the absence of guidance from the appellate courts on the question, reviewed the available out-of-circuit district court decisions and concluded that the cases "supported the proposition that the transaction fee at issue was permissible where there were other payment options and the charge did not inure benefits to the collector." *Id.* at *9. Applying that standard to the facts before it, the court concluded

> that the charge was not "incidental" to the principal obligation. 15 U.S.C. § 1692f(1). It is
> undisputed that this charge would be imposed only if the debtor elected to pay via credit

card. While this payment method was offered in the letter, the letter also provided for payment without additional charge if the debtor elected to pay by check. Nothing in the letter steered the consumer to payment by credit card, and the letter provided clear notice that the fee was imposed only upon those who sought to pay via credit card. A consumer must choose to affirmatively and separately opt-in to this alternative method.

*Id.* at \*10. The *Flores* court found this result in line with the intentions of the FDCPA to prevent unfair or unconscionable practices, because Plaintiff made no argument that offering a voluntary convenience fee was inherently unfair or unconscionable when other feeless methods of payment were available, and "it would seem unfair or inconvenient to many debtors to be deprived of the opportunity to pay by credit card as a result of ban on an opt-in fee to cover costs." *Ibid.*

In opposition, Plaintiff convincingly argues that subsequent courts have recognized that *Flores* "takes a minority position in regard to transaction fees." *Wittman v. CB1, Inc.*, No. 15-CV-105, 2016 WL 1411348, at \*4–5 (D. Mont. Apr. 8, 2016), *report and recommendation adopted*, No. 15-CV-105, 2016 WL 3093427 (D. Mont. June 1, 2016). The Courts to have considered *Flores* have found fault with at least three aspects of its reasoning. Firstly, courts have observed that "offering a payment option that does not violate the statute does not save offering a payment option that would violate the statute, as the latter is still an attempt to collect a fee which is prohibited by the FDCPA." *Weast v. Rockport Fin., LLC*, 115 F. Supp. 3d 1018, 1023 (E.D. Mo. July 17, 2015). The Court finds this point well-taken. § 1692f prohibits even the attempt to collect an unauthorized fee. The mere fact that an unauthorized fee is offered as an alternative to authorized fees does not mitigate the fact that the fee itself is still prohibited.

Secondly, courts have criticized *Flores* for observing the significance of whether the charged convenience fee inures to the benefit of the collector, but failing to inquire into the facts that would establish that the benefit had "passed through" to a third party other than the debt collector, and thereby rendered the fee non-incidental to the underlying debt. Courts have found

15

that credit card convenience fees do not violate "the FDCPA if the debt collector did not receive any additional compensation from the fee because it was passed on to the third party that had imposed the fee," but have found this fact-intensive inquiry more appropriate for resolution on summary judgment, not on a motion to dismiss as the *Flores* court ruled. *Wittman*, 2016 WL 1411348, at *4; *Johnson-Morris v. Santander Consumer USA, Inc.*, 194 F. Supp. 3d 757, 764–65 (N.D. Ill. 2016) (credit card convenience fees were incidental to the underlying debt where they exceeded any actual pass-through, profiting defendant). Courts have referred to this issue as the "pass-through defense." "A pass-through fee is where, for example, a credit card company such as Visa charges the debt collector $14.95 to process credit card payments and, in turn, the debt collector charges debtors the same amount if they pay by credit card." *Acosta v. Credit Bureau of Napa Cty.*, supra, at *2. However, the parties here agree that this action does not involve a pass-through defense. Defendant expressly waived any potential defense that the $5.00 convenience fee offered in the Letter was paid to a third party processor. *See,* Plaintiff's Moving Brief, Exhibit F, p. 3, ¶ 15. Accordingly, unlike in *Flores*, which did not directly address the issue, in this case Defendant has admitted the receipt of a direct benefit from the challenged Fee, militating in favor of a finding that the Fee is incidental to Plaintiff's underlying debt.

Third and finally, courts have observed that, contrary to the *Flores* court's suggestion, it is not for the courts to independently assess whether a particular convenience fee is "unfair" or "unconscionable" "because Congress has already made that determination." *Lindblom v. Santander Consumer USA, Inc.*, 2016 WL 2841495, at *6–7 (E.D. Cal. May 9, 2016). "Regardless of the exact meaning of 'unfair or unconscionable,' the FDCPA explicitly prohibits '[t]he collection of *any* amount (including *any* interest, *fee,* charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the

debt or permitted by law.'. . . . What matters is § 1692f(1)'s plain instruction that the collection

of any amount incidental to the principal obligation, unless otherwise authorized by agreement

between the parties or permitted by law, violates the FDCPA. Courts have interpreted the

FDCPA broadly, and it would be anomalous to conclude 'any amount' does not encompass . . .

[credit card] processing fees" because of a separate unfairness or unconscionability analysis."

*Quinteros v. MBI Assocs., Inc.*, 999 F. Supp. 2d 434, 438 (E.D.N.Y. 2014) (quoting 15 U.S.C §

1692f(1) (emphasis added)). This is consistent with the Third Circuit's directive that "*the only*

*inquiry* under § 1692f(1) is whether the amount collected was expressly authorized by the

agreement creating the debt or permitted by law." *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629

F.3d 364, 368 (3d Cir. 2011) (emphasis added).

      The Court finds these criticisms of *Flores* persuasive, and, in the absence of controlling

precedent from the Third Circuit, finds that, for the purposes of determining whether a given fee

violates § 1692f, "[i]t is immaterial that the fee was optional and fully disclosed if the fee is

impermissible altogether." *Acosta v. Credit Bureau of Napa County*, 2015 WL 1943244, at *3–4

(N.D.Ill. Apr. 29, 2015); *Johnson-Morris*, 194 F. Supp. 3d at 765 (same). I therefore join with

the majority of district courts to have considered the question in holding that the optional credit

card convenience fee offered in Defendant's Letter to Plaintiff in this case is "incidental" to

Plaintiff's underlying debt. *See Wittman*, 2016 WL 1411348, at *5 ("the Court is persuaded by

the majority of courts that have found a transaction fee imposed for using a certain payment

method can be considered incidental to the principal obligation"); *Johnson-Morris*, 2016 WL

3671468, at *5 ("the majority of courts that have found a transaction fee imposed for using a

certain payment method can be considered incidental to the principal obligation"); *Shami v. Nat'l*

*Enter. Sys.,* No. 09–CV–722, 2010 WL 3824151, at *3–4 (E.D.N.Y. Sept. 23, 2010) (holding

that the defendant's charging of transaction fees for payments by phone or internet were still fees "incidental to Plaintiff's purported actual debt" prohibited by § 1692f(1), even though they were conditioned on the chosen method of payment; collecting cases). Defendant's motion for summary judgment on the basis of the convenience Fee's exemption from the coverage of § 1692f(1) is therefore denied.[1]

---

[1]    I feel the need to reiterate that Defendant chose not to avail itself of the well-established pass-through defense to liability available in FDCPA fee cases. Since at least *Lee v. Main Accounts, Inc.*, 125 F.3d 855, 855 (6th Cir. 1997), courts have recognized that the type of transaction fees at issue in this case fall "outside the scope of 15 U.S.C. § 1692e(2)(B)" and do not "amount to an 'attempt' to collect an extra fee under 15 U.S.C. § 1692f(1)" where the fee does not accrue to the benefit of the debt collector, but instead is a "third party charge triggered when the debtor chose the option of paying by credit card." *Ibid.* The key inquiry in such a case is whether the defendant "would not have received any additional compensation from the credit card fee." *Ibid.* At least some evidence potentially relevant to the defense was elicited in this case. For example, in his deposition, Defendant's corporate representative appeared to suggest that at least some credit card transaction fees are collected by Defendant merely to pass on to a third party service provider.

> Q: Mr. Alford, where on the profit loss statement do you see the convenience fee reflected?
> A: Credit card transaction fee.
> . . .
> Q: Next to the entry credit card transaction fee I see an amount $459,133.66?
> A: Correct.
> . . .
> Q: Now, is that amount the amount that AR Resources collected or the amount it was charged in convenience fees?
> A: those are the amounts that we are charged in convenience fees or we are charged for using credit cards.
> Q:  I understand. So my question is not how much you were charged for using credit cards. But you stated that you collected $5 from debtors from November 2014 to the 2015 owing debt to Center for Orthopedics and Sports Medicine. And only one those debtors actually paid the $5 fee. But where would you locate that $5 fee on that profit and loss statement? What category would it be included in?
> A: I will repeat that again. Credit card transaction fee
> Q: The credit card transaction fee is the amount of money that AR Resources has to pay a third party for using credit cards, correct?
> A: Correct.
> Q: I'm asking what about the amounts of money that AR Resources received from debtors for using credit cards? Where is that?

### B.  The Fee is Not Expressly Authorized by Plaintiff's Agreement with COSM

Defendant next argues that the FDCPA has not been violated because the Fee is expressly authorized in the Agreement. The relevant language in the Agreement reads:

> In the event that COSM has to use collection techniques in the form of legal action or an agency, I agree to pay collection agency fees of 2% per month of the balance due, in addition to attorney and court costs.

DSMF, ¶ 6. The pertinent section of the Letter reads:

> If you wish to pay by credit card, complete the credit card information below, tear off and return in the enclosed envelope. A $5.00 convenience fee should be added to all transactions. No fees applied to mailed checks or money orders.

DSMF, ¶ 2. Defendant reasons that Plaintiff was bound in the Agreement to pay collection agency fees of two percent of the balance due per month if COSM used a collection agency to collect the outstanding balance. Plaintiff's outstanding balance due to COSM was $1,405.50 at the time the letter was sent. Two percent per month of Plaintiff's balance due was thus $28.11 at the time the letter was received. Therefore, Defendant argues, under the Agreement, Defendant was authorized to collect up to $28.11 per month as collection agency fees at the time Plaintiff received the letter; the single $5.00 credit card convenience fee offered in the Letter was thus significantly less than the $28.11 in collection agency fees expressly authorized by the

---

A: Credit card transactions fees. So in other words - - let me just help you out here. If this person did not pay that $5 fee, the dollar amount on this page 1 would be $459,138.66.

Alford Tr. 45:17-47:11. It thus appears from the corporate representative's testimony that the convenience fee charged to debtors may have been used directly to offset the fees paid to third-party credit card service providers. Elsewhere in the deposition transcript, Plaintiff's counsel clearly attempted to elicit more testimony relevant to pass-through, but this was strenuously opposed by Defense counsel. Alford Tr. 42:9- 42:14 ("Q: Who does AR Resources use for its credit card processing? Mr. Fisher: Why is that relevant? We have not asserted a pass-through defense. So why is that relevant?"). There is no guarantee that such a defense would have been successful, and indeed, at least one court has limited *Lee* to fees not merely passed-through, but actually collected by third-parties. *Quinteros*, 999 F. Supp. 2d at 440. The Court need not decide this question, however, as Defendant's decision not to pursue a pass-through defense has significantly narrowed the Court's area of consideration in its threshold § 1692f inquiry.

Agreement creating the debt. In other words, Defendant argues that the Fee falls within the total of collection agency fees expressly authorized in the Agreement. Defendant does not contend that the convenience fee is authorized by New Jersey state law, narrowing the question before the Court solely to that of express authorization in the Agreement.

In opposition and in her cross-motion, Plaintiff argues that the language of the Agreement cannot be read to expressly authorize the challenged Fee. Plaintiff contends that the language in the underlying Agreement between Plaintiff and COSM does not mention or otherwise contemplate a flat $5.00 credit card convenience fee; rather, it expressly only authorizes (1) collection agency fees of 2% per month of the balance due, (2) attorneys' fees and (3) court costs. Accordingly, Plaintiff concludes that "[t]his credit card convenience fee *is not a collection agency fee of 2% per month*." Plaintiff's Moving Brief, 9 (emphasis added). In further support of her position, Plaintiff cites to the deposition testimony of Defendant's corporate representative in which the representative stated that Defendfdant was not "charging" the Plaintiff a collection agency of 2% per month. *See* Telephonic Deposition of Robert Alford, July 26, 2016, Tr. 34:6-12. Nor, Plaintiff contends, can the Fee possibly be considered attorneys' fees or court costs.

The parties have not briefed what law applies to this Court's interpretation of the plain language of the Agreement, but as a contract made in New Jersey between New Jersey residents, the Court presumes New Jersey law to apply. *See* Financial Agreement and Authorization for Treatment, December 5, 2013, Dkt. No. 11-5, 1. "[U]nder New Jersey law, 'discerning contractual intent is a question of fact unless the provisions of a contract are wholly unambiguous.'" *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 378–79 (3d Cir. 2016) (quoting *Jaasma v. Shell Oil Co.*, 412 F.3d 501, 507 (3d Cir. 2005)). "An ambiguity in a contract exists if the terms of the contract are susceptible to at least two reasonable alternative

interpretations." *Id.* at 379 (quoting *M.J. Paquet, Inc. v. N.J. Dep't of Transp.*, 171 N.J. 378, 794 A.2d 141, 152 (2002)). "When that is so, it is permissible to look to evidence outside the contract 'as an aid to interpretation.'" *Id.* (quoting *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 195 N.J. 231, 948 A.2d 1285, 1289 (2008)).

That said, it is well-established under New Jersey law that "courts must always 'consider all of the relevant evidence that will assist in determining the intent and meaning of the contract' when making ambiguity determinations." *Mylan Inc. v. SmithKline Beecham Corp.*, 723 F.3d 413, 419 (3d Cir. 2013) (quoting *Conway v. 287 Corp. Ctr. Assocs.,* 187 N.J. 259, 901 A.2d 341, 346 (2006)). "Evidence of the circumstances is always admissible in aid of the interpretation of an integrated agreement. This is so even when the contract on its face is free from ambiguity." *Sumitomo Mach. Corp.,* 81 F.3d at 332 (quoting *Atl. N. Airlines, Inc. v. Schwimmer,* 12 N.J. 293, 96 A.2d 652, 656 (1953)). "In aid of interpretation, courts should consider, for example, 'the particular contractual provision, an overview of all the terms, the circumstances leading up to the formation of the contract, custom, usage, and the interpretation placed on the disputed provision by the parties' conduct.'" *Mylan,* 723 F.3d at 419 (quoting *Kearny PBA Local No. 21 v. Town of Kearny,* 81 N.J. 208, 405 A.2d 393, 400 (1979)). "Thus, courts must consider all relevant evidence to determine if any ambiguity exists and, if the contested provisions fall in that gray area, summary judgment is improper."

In any event, the Third Circuit has observed that federal law is consistent with the New Jersey approach. *Mylan,* 723 F.3d at 419 n. 8 (citing *Int'l Union, UAW v. Mack Trucks, Inc.,* 917 F.2d 107, 111 (3d Cir.1990) ( "'In making the ambiguity determination, a court must consider the words of the agreement, alternative meanings suggested by counsel, and extrinsic evidence offered in support of those meanings.'" (quoting *Kroblin Refrigerated Xpress, Inc. v. Pitterich,*

805 F.2d 96, 101 (3d Cir.1986))); *Teamsters Indus. Emps.,* 989 F.2d at 135 (instructing that a court construing contract language is not permitted "simply [to] determine whether, from [its] point of view, the language is clear[, but instead must] 'hear the proffer of the parties and determine if there [are] objective indicia that, from the linguistic reference point of the parties, the terms of the contract are susceptible of different meanings' " (last alteration in original) (quoting *Sheet Metal Workers, Local 19 v. 2300 Grp., Inc.,* 949 F.2d 1274, 1284 (3d Cir.1991)))).

### 1. Express Authorization

As the Court observed, *supra*, under the FDCPA, "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law" is a violation of § 1692f(1). 15 U.S.C. § 1692f(1). *See also Pollice*, 225 F.3d at 407–08 (adopting the reasoning in *Tuttle,* 190 F.3d at 13 (a fee does not violate the FDCPA (1) where it is expressly permitted under state law; or (2) if state law does not expressly authorize or prohibit the charge, where the customer expressly agreed to the fee in the contract creating the debt)). The Third Circuit in *Pollice*, has provided the most significant discussion of the meaning of "express authorization" in the FDCPA context. Asked to consider whether interest charged by the defendant debt collector was expressly authorized by the underlying agreements for the provision of water and sewer services between plaintiff homeowners and government entity service providers, the Third Circuit held that the defendant's argument that the interest and penalty rates were "implicitly" incorporated into the service agreements by municipal ordinances and resolutions was insufficient to establish "express" authorization. The Court of Appeals contrasted defendants' argument for implicit inclusion with interest and penalty rates being "'expressly set

forth in the[] agreements" themselves. *Pollice,* 225 F.3d at 408. Thus, although the Third Circuit did not explicitly adopt a definition of express authorization in the FDCPA context, *Pollice* strongly suggests that "express" means plain on the face of the document itself, as opposed to implied by other sources external to the agreement.

This conclusion is consistent with the Third Circuit's general definition of "express" as a common legal term of art. Where, "there is no caselaw discussing how [courts] should interpret this language in this context[,] . . . [courts] turn for guidance to the common definition of 'express' as 'explicit,' in contrast to implicit or inferred." *Johnson v. Ashcroft*, 286 F.3d 696, 702 (3d Cir. 2002). *See also id.* (citing Black's Law Dictionary 580 (6th ed. 1990) (*Black's Law Dictionary*, for instance, defines "express" as "[c]lear; definite; explicit; plain.... Made known distinctly and explicitly, and not left to inference."); *id.* ("Other dictionaries give substantially similar definitions. *See, e.g.*, Webster's Third New International Dictionary 803 (1993) (defining 'express' as "directly and distinctly stated or expressed rather than implied or left to inference ... definite, clear, explicit, unmistakable'")). General principles of interpretation thus also support that "express" authorization means authorization that is plain on the face of the document itself, not merely implied by other sources external to the agreement

### 2. Interpretation of the Agreement With Respect to 1692f

Applying that definition, the Court first observes that Defendant, unlike the *Pollice* defendants, has identified the specific provision in the Agreement underlying Plaintiff's debt that is alleged to authorize the challenged Fee: "I agree to pay collection agency fees of 2% per month of the balance due." Defendant argues that the phrase "collection agency fees" describes a category of fees that may be charged by Defendant and the phrase "of 2% per month of the balance due" sets the limit of the sum of the fees in that category. In other words, Defendant

reads that provision as expressly authorizing collection agency fees *up to* 2% per month of the balance due. Although Defendant does not provide a thorough explanation of this last point, another critical element of Defendant's contract interpretation is the implicit assumption that the Fee in question, a credit card convenience fee, falls within the category of "collection agency fees" expressly dealt with in the Agreement.

Plaintiff reads the provision differently, and directs the Court's attention to the recent, and factually similar matter of *Thomas v. Youderian*, 2017 U.S. Dist. LEXIS 16585, *26-28 (D.N.J. Feb. 3, 2017), in which the court allowed a similarly situated plaintiff's claims to proceed past the stage of the motion to dismiss. Specifically, Plaintiff makes two contentions. Firstly, she reads "collection agency fees" as a distinct category of fees, excluding credit card convenience fees and other fees not explicitly enumerated in the Agreement, and, secondly, she reads "of 2% per month of the balance due" to mean "equal to 2% per month of the balance due." Accordingly, Plaintiff contends that the only collection agency fee expressly authorized by the Agreement is a single, monthly collection agency fee equal to 2% of Plaintiff's balance due. Plaintiff's Moving Br., 9.

The Court finds the holding of the district court in *Thomas*, instructive, but not dispositive of which interpretation of the Agreement should prevail here.

The agreement underlying the plaintiff's debt in *Thomas* read in relevant part:

If my account is referred to a collection agency and/or attorney for collection, I agree to be responsible for the payment of *an additional collection fee in an amount equal to 30% of my outstanding balance*, inclusive of accrued interest. I also understand there is a $15.00 returned check fee should, a check be returned for any reason.

*Thomas*, 2017 U.S. Dist. LEXIS 16585 at *27 (emphasis added). Judge McNulty, thus held that

the Agreement does not "expressly authorize" a $3.00 convenience fee for credit card charges, as Section 1692f(1) requires. True, it authorizes a 30% "collection fee," and 30% of this $327.80 debt comes out to $98.34, a sum far in excess of $3.00. But I cannot indulge some "no harm, no foul" rule that the debt collector could have charged some

other fee, calculated in a different manner, that would have been even larger than the one
it did charge. Viewing the Letter through the eyes of the least sophisticated debtor and
taking the alleged facts in the light most favorable to Thomas, the amended complaint
adequately alleges that this particular Convenience Fee for use of a credit card was not
explicitly authorized. And having so alleged, the amended complaint states a claim under
the FDCPA.

*Id.* at *27-28. In short, the court found that, in the absence of some indication in the text of the

agreement itself, it could not read "collection fee" as encompassing the clearly distinct credit

card "convenience fee." To be sure, the text of the agreement in *Thomas* is more explicit than

that of the Agreement in this case. Indeed, if the Agreement here explicitly stated that Plaintiff

agreed to pay "*an* additional collection agency fee *equal to* 2% per month of the balance due,"

this Court's inquiry would be over before it began because, as the court observed in *Thomas*, the

agreement at issue would clearly set forth only a single type of fee of a specific amount that

could not be read to encompass a different type of fee for a different amount not expressly

authorized. The wording of the provision at issue here, however, is different enough than that in

*Thomas*, to require additional analysis. The persuasive authority that this Court gleans from that

case merely reinforces the principle that express authorization requires clear, plain support in the

agreement itself for a party's proposed fee or charge.

Returning to the agreement in this case, Plaintiff agreed to pay "collection agency fees of

2% per month of the balance due." As a threshold matter, then, the presence of the word "fees,"

plural, makes this case more nuanced than the single fee plainly set forth in the agreement in

*Thomas*. Still, without drawing inferences from any other source, the Court's first conclusion is

the Agreement on its face supports the contention that Plaintiff agreed to pay some category of

fees called "collection agency fees."  This interpretation is consistent with the holding of the

Third Circuit in *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 175 (3d Cir. 2015), *cert. denied*

*sub nom. Udren Law Offices, P.C. v. Kaymark*, 136 S. Ct. 794, 193 L. Ed. 2d 710 (2016), where

the Court of Appeals found that the defendant "expressly agreed to the collection *of certain fee categories*, such as 'attorneys' fees, property inspection and valuation fees.'" (emphasis added). The *Kaymark* case, however, was resolved on grounds other than the inclusion of the explicitly identified fee categories in the underlying agreement. For the purposes of this case, the Court relies upon *Kaymark* only to show that Defendant's argument that "collection agency fees" is a category of fees, rather than a single type of fee, is nonfrivolous.

Having determined that "collection agency fees" means a category of collection agency fees, the next question before the Court is whether the $5.00 credit card convenience fee in this case falls within that category and therefore is a collection agency fee for the purpose of the Agreement. At the outset, I note that the parties have provided scant briefing on this all important question. Plaintiff's position is that, unless the words "convenience fee" appeared in the Agreement, there can be no express authorization of the fee in this case. Defendant's position assumes that convenience fees are collection agency fees, and therefore Defendant focuses only on the question of whether Defendant is entitled to charge a lesser included amount to the 2% set forth in the Agreement. Unfortunately, the text of the Agreement itself does not provide the Court with much guidance. "Collection agency fees" is not a defined term, and nothing else in the Agreement sheds light on its meaning. Looking at the factors extrinsic to the contract, the Court finds at least some support for the positions of both parties.

Firstly, as the Court noted above in its discussion of whether the Fee charged was "incidental" to Plaintiff's debt, Defendant has conceded, and Plaintiff has agreed, that there is no pass-through defense in this case, and, accordingly, that the Fee accrued to the benefit of Defendant, COSM's collection agent, not to some third-party service provider. Plaintiff's Moving Brief, Exhibit F, p. 3, ¶ 15. In that sense, therefore, one could read a "collection agency

fee" as any fee charged by and for the benefit of the collection agent, Defendant. I have concerns with finding such a broad definition to be "expressly" set forth in the Agreement, before looking to the only other extrinsic evidence in the case offered by the parties; that evidence, however, only further complicates the overall picture.

Plaintiff relies on the deposition testimony of Defendant's corporate agent, Robert Alford, as establishing that Defendant disavowed the "charging" of any collection agency fee to Plaintiff in this case. Specifically, Plaintiff cites the following passage:

> Q: Mr. Alford, I'm looking again at this statement that says, I agree to pay collection agency fees of 2 percent per month of the balance due. Was AR Resources charging Mrs. Fuentes a collection fee of 2 percent per month of the balance due?
>
> A: No, we were not.
>
> Q: Were you charging Mrs. Fuentes any collection fees at all?
>
> A: No, we were not.
>
> Q: The collection letter does state that a $5 convenience fee should be added for credit card payments. And is it your testimony that the authority from that fee comes from the words, "I agree to pay collection agency fees of 2 percent per month of the balance due"
>
> A: Yes.

Alford Tr. 34:6-22. Plaintiff reads this exchange as an admission that the only authority identified for the convenience fee in this case is a provision that, generally mentions only collection agency fees, and that, although Defendant attempted to charge a convenience fee in this case, Defendant explicitly stated that no collection agency fees were ever charged. Therefore, the Plaintiff concludes, Defendant has tacitly admitted that the convenience fee is not a collection agency fee.

Defendant reads this exchange differently, noting that Defendant's representative testified that "the authority" to charge the $5 convenience fee originates from the provision of the Agreement authorizing collection agency fees. As it has always been Defendant's position, and

indeed the contrary has never been alleged by Plaintiff, that Defendant never charged Plaintiff

any fees in this case, Defendant contends that there is no inconsistency in Defendant's

admissions. Defendant argues that the complete deposition testimony of Defendant's

representative is that, although there was never a time when Defendant actually was charging

Plaintiff collection fees, the Agreement expressly authorized Defendant *to attempt* to charge such

fees by offering Plaintiff the opportunity to pay the convenience fee. Because Plaintiff has never

alleged or introduced evidence that fees were charged, this has always been an attempt case

under § 1692f(1). *See Allen, N.A.*, 629 F.3d at 367 n. 4 ("'collection' in § 1692f(1) includes

attempted collection as well as actual collection.").

      The Court finds both parties' interpretations of Defendant's representative's testimony to

be plausible, and, due to the extremely succinct responses in the exchange, cannot discern

definitively what was meant. The Court does not view the testimony, as Plaintiff does, as a

smoking gun dooming Defendant's case, nor does the Court view it as offering significant

support to Defendant's interpretation of the Agreement. Defendant's representative, did not, for

example, simply state directly that a convenience fee is a collection agency fee, which is why

Defendant possesses authority to charge under the Agreement. Furthermore, the parties have not

given this Court any other extrinsic evidence regarding the meaning of the of the term

"collection agency fee," either in the industry, or in common usage between the parties. This

paucity of evidence, however, ultimately accrues to the benefit of the Plaintiff in this case. If the

Agreement itself and the testimony of Defendant's own representative do not clarify or provide

support for the fact that credit card convenience fees are "collection agency fees" as that term

was intended in the Agreement, the Court cannot find that that the phrase "collection agency

fees" *expressly* authorizes the charging of "a convenience fee."

Ultimately, a final question of interpretation before the Court most strongly dictates the outcome in this case. The parties disagree about the meaning of the phrase "of two percent per month." Plaintiff contends it means "equal to two percent per month," and Defendant contends it means "up to two percent per month." Firstly, the Court observes that the common meaning of the word "of," supports Plaintiff's reading of the Agreement. One of the most common usages of "of" is as "a function word to indicate the component material, parts, or elements, or the contents." Webster's Ninth New Collegiate Dictionary 819 (1985). This comports with the Court's understanding of the phrase in common usage. For example, when the average consumer, not to mention the least sophisticated debtor, agrees to pay automobile insurance payments *of* $200 per month, or is promised by her bank that her savings account will receive interest payments *of* 1% per year, it is perfectly clear that the consumer's expectation is that the insurance company will be demanding payments equal to and no less than $200 each month and that the consumer will be entitled to interest equal to and no less than 1% of the value of their account balance each year.

Secondly, the Court is persuaded that it too cannot endorse the "no harm, no foul" rule the district court rejected in *Thomas*. In that case, the court reasoned that because the FDCPA requires additional fees to be expressly authorized by state statute or within the agreement underlying the debt, courts cannot find that other fees, designated by different names and calculated by other methods, are allowable merely because they are smaller in their absolute magnitude than the fees admittedly expressly authorized in the agreement. *Thomas*, 2017 U.S. Dist. LEXIS 16585 at *27-28. Here, Defendant was expressly authorized under the Agreement to charge Plaintiff agency fees of 2% of the outstanding balance, or $28.11, per month, calculated as a percentage of the outstanding balance, at the time the collection Letter was received by

Plaintiff. Defendant's $5.00 credit card convenience fee is a flat fee, not expressly included within the authorized amount by the plain language of the Agreement. Even were it ultimately possible, on the basis of facts not before the Court, to infer that, as Defendant assumes, a convenience fee falls within the category of agency fees, the Court would nevertheless be faced with the fact that the convenience fee would be for a different amount, calculated in a different manner, than the fee authorized in the Agreement. Accordingly, to read "of 2% per month" in the Agreement to mean "up to 2% per month" is not a reasonable interpretation of the Agreement, giving proper effect to the provisions expressly set forth therein. *Avaya*, 838 F.3d at 379 (ambiguity in a contract only exists if the terms are susceptible to at least two reasonable alternative interpretations). As express authorization is the only rationale by which Defendant contends its conduct in offering Plaintiff the $5.00 credit card convenience fee — an amount charged incidental to a debt under the FDCPA — avoids violating § 1692f(1), the Court finds that in its clear absence, Plaintiff is entitled to summary judgment.[2]

---

[2]      In reaching my conclusion that a grant of summary judgment in Plaintiff's favor is compelled by the absence of express authorization for the fee set forth in the Letter in this case, I do not rely on the precedents offered by Plaintiff, all of which arise in the context of motions to dismiss. The opinion of this Court, therefore, does not conflate a plaintiff's entitlement to proceed on his or her claims with an entitlement to judgment as a matter of law. Plaintiff most heavily relies on a decision out of the Eastern District of New York, contending that "[t]his identical issue was decided by the district court in *Shami v. National Enterprise Systems, Inc.* No. 09-CV-722, 2010 WL 3824151 (E.D.N.Y. Sept. 23, 2010)." Plaintiff's Moving Br., 7. In *Shami*, however, "Defendant d[id] not assert that the transaction fees described in the Collection Letter were expressly authorized by the underlying agreement creating the debt . . . . Defendant contend[ed] instead [only] that § 1692f(1) itself is inapplicable because the phone and online methods of payment are optional." *Shami v. Nat'l Enter. Sys.*, No. 09-CV-722 RRM VVP, 2010 WL 3824151, at *2 (E.D.N.Y. Sept. 23, 2010). This Court has already ruled that the optional nature of the convenience fee does not render it not incidental to the debt as Defendant argued. *Shami*, therefore, has no further relevance to the Court's express authorization inquiry. Two other of the cases offered by Plaintiff as persuasive authority are similarly irrelevant to the express authorization inquiry. *Weast v. Rockport Fin., LLC*, 115 F. Supp. 3d 1018, 1022 (E.D. Mo. 2015) ("Here, Defendant does not suggest that the agreement creating the debt authorized the collection of a convenience fee when the debt was paid by credit or debit card."); *Quinteros*

### 3.   Claims Under § 1692e

Section § 1692e prohibits debt collectors from employing "any false, deceptive, or

misleading representation or means in connection with the collection of any debt." Section

---

*v. MBI Assocs., Inc.*, 999 F. Supp. 2d 434, 437 (E.D.N.Y. 2014) ("Defendant does not contend that the processing fee described in the Processing Fee Statement is either expressly authorized by the contract underlying the debt or otherwise permitted by New York law.")

The next most heavily relied upon of Plaintiff's authorities is one of only two in-Circuit opinions on the express authorization issue.  Plaintiff contends that "[a]s in the *Pollice* matter, the FDCPA was violated in this action, where the Plaintiff never agreed with the original creditor that she could be charged or assessed a $5.00 'convenience fee' for paying her debt via credit card." Plaintiff Moving Br., 8. The issue in *Pollice*, however, was totally distinct from that in this case. Here, the parties disagree as to whether a specific provision, undeniably included within the agreement underlying the debt, expressly authorizes the defendant to collect a certain fee. In *Pollice*, by contrast, the Court ruled that the defendants were unable to even identify a provision, attempting instead to find such authorization implicit in the agreements underlying the debt by action of municipal ordinances and resolutions, or payment plans separate and apart from the debt instrument. *Pollice*, 225 F.3d at 408 ("Defendants do not contend that the interest and penalty rates were 'expressly' set forth in these agreements or transactions, nor do they contend that homeowners actually consented to or were aware of the rates when they subscribed to the services. The most defendants can say is that the rates were made an *implicit* part of such transactions because they are set forth in municipal ordinances and resolutions. We do not believe this suffices. Nor can defendants rely on the payment plans, as the plans are not the 'agreement creating the debt.'"). The Court draws upon *Pollice* for its general principle that express authorization cannot be implied from extrinsic sources, not for its specific facts.

Plaintiff's reliance on *Kaymark* is similarly misplaced. The agreement underlying the debt in that case specified that the defendant could only charge for services "performed" and expenses "incurred" in pursuing the authorized debt collection remedies. The Third Circuit thus held that defendant "was not authorized to collect fees for not-yet-performed legal services and expenses, forming a basis for a violation of § 1692f(1)." *Kaymark*, 783 F.3d at 175–76. *See also Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606, 610 (11th Cir. 2014) ("Under the contract at issue here, Bradley agreed to pay the actual costs of collection; he did not agree to pay a percentage above the amount of his outstanding debt that was unrelated to the actual costs to collect that debt."); *Fonseca v. Focus Fin. Servs.*, No. 15-80410-CIV, 2016 WL 4146663, at *5 (S.D. Fla. Aug. 1, 2016) (the agreement stated "I hereby guarantee payment of all attorney's fees, court costs and collection charges *incurred* in the event collection action is initiated" by defendant) (emphasis added). The Agreement in this case clearly authorizes Plaintiff to collect some fees prospectively and proactively, not just retrospective costs and expenses.

Finally, the case of *Wittman*, is also distinguishable from the case at bar. There, the defendant failed to produce any agreement in the record from which to even argue express authorization. Accordingly, the district court, at the stage of a motion to dismiss, took Plaintiff's well-pleaded allegations as true, and denied dismissal without reviewing any agreement underlying the debt at all. *Wittman v. CB1, Inc.*, 2016 WL 1411348, at *5.

1692e(2) prohibits: "[t]he false representation of (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." Section 1692e(10) further prohibits: "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt[.]" Plaintiff brings claims under both provisions, arguing that Defendant's false representation of Defendant's entitlement to charge a fee unauthorized by and prohibited under § 1692f, provides the factual predicate for each § 1692e violation. Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692e. The Court has repeatedly held that "[a]s remedial legislation, the FDCPA must be broadly construed in order to give full effect to these purposes," *Caprio v. Healthcare Revenue Recovery Grp., LLC,* 709 F.3d 142, 148 (3d Cir. 2013), and, as such, we analyze the communication giving rise to the FDCPA claim "from the perspective of the least sophisticated debtor," *Rosenau v. Unifund Corp.,* 539 F.3d 218, 221 (3d Cir. 2008) (internal quotation marks omitted).

At the outset the Court finds that an alleged misrepresentation concerning Defendant's entitlement to a convenience fee cannot serve as the basis for a violation of § 1692e(2)(A), as it does not amount to a false representation about the character, amount or legal status *of any debt*. 15 U.S.C. § 1692e(2)(A). This Court agrees with the analysis of the district court in *Weast* that "[t]he statement about the collection fee was separate from the statement of Plaintiff's total balance due, which was stated . . . in the letter. A reasonable unsophisticated consumer would understand that the convenience fee was not a part of her principal debt. Thus, Plaintiff fails to state a claim under § 1693e(2)[(A)]". *Weast*, 115 F. Supp. 3d at 1023. Here, as there, there is no risk that even the least sophisticated debtor would confuse the clearly optional convenience fee with the underlying debt owed, which was itself set forth clearly and separately in the Letter.

Courts, however, have long recognized that a violation of § 1692f(1) can serve as the basis of a violation of § 1692e(2)(B) for mischaracterization of compensation defendant could lawfully receive under the FDCPA. *Shami.*, 2010 WL 3824151, at *4 ("Because the Court has concluded that Plaintiff has stated a claim under § 1692f(1) of the FDCPA, Plaintiff has also stated a claim under § 1692e(2). Specifically, if it is determined that the Collection Letter violates § 1692f(1) by representing that the transaction fees are permissible. Defendant also would be in violation of § 1692e(2)[(B)]."); *Acosta v. Credit Bureau of Napa Cty.*, No. 14 C 8198, 2015 WL 1943244, at *4 (N.D. Ill. Apr. 29, 2015) ("Plaintiff contends that Defendant violated Section 1692e by falsely representing in the debt collection letter that it could lawfully charge a processing fee for credit card payments. Because this Court has concluded that Plaintiff has stated a claim under Section 1692f, Plaintiff has also stated a claim under Section 1692e. If the debt collection letter violates Section 1692f(1) by representing that the processing fee is permissible, then Defendant also would be in violation of Section 1692e."); *Weast*, 115 F. Supp. At 1023 n.2 (same); *Quinteros*, 999 F. Supp. 2d at 439–40 (same). This Court agrees, and finds that Defendant's violation of § 1692f(1), by including in the Letter a fee not authorized by state law or the Agreement, also supports a violation of § 1692e(2)(B) by falsely claiming entitlement to compensation which may be received by a debt collector for the collection of a debt. The least sophisticated debtor reviewing the letter could conclude, and almost certainly would conclude, that Defendant was legally entitled to charge the $5.00 credit card convenience fee.

Finally, "[c]ourts have long held that after finding a valid claim under a more specific subsection of § 1692e . . . further analysis under § 1692e(10) is somewhat duplicative."*Chulsky v. Hudson Law Offices, P.C.*, 777 F. Supp. 2d 823, 831-32 (D.N.J. 2011) (internal quotations omitted). The Court finds that, having found that Plaintiff is entitled to judgment against

Defendant under § 1692e(2)(B) for claiming entitlement to compensation not legally owed,

Plaintiff is also entitled to judgment against Defendant under § 1692e(10) for making a false

representation as part of an attempt to collect any debt. Accordingly, in addition to summary

judgment on her claim under 15 U.S.C. § 1692f(1), the Court also grants summary judgment in

Plaintiff's favor under §§ 1692e(2)(B) and 1692e(10).

## V. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is denied, and

Plaintiff's motion for summary judgment is granted. The Court notes that Plaintiff has moved for

judgment on liability on her individual claims before moving for class certification.[3] Thus, this

Court's opinion and order close the case.

Dated:     3/31/2017                                    /s/ Freda L. Wolfson
                                                    The Honorable Freda L. Wolfson
                                                     United States District Judge

---

[3] Based upon the scheduling orders entered in this case, fact discovery is closed, and, indeed, there does not appear to have been any discovery taken with regard to the putative class, nor has any notice been given to putative class members. Thus, the Court has serious questions about Plaintiff's ability to raise claims, post-judgment, on behalf of the putative class in this case, in light of the rule against one-way intervention. *See* Fed. R. Civ. P. 23(c) and Notes of the Advisory Committee.